IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

KEVIN MCKIE,                            )
                                       )
            Plaintiff,                 )    TC-MD 220378R
                                       )
      v.                               )
                                       )
DEPARTMENT OF REVENUE,                 )
State of Oregon,                       )
                                       )
            Defendant.                 )    **DECISION**

Plaintiff appealed Defendant's Notice of Assessment dated June 2, 2022, for the 2018 tax year. A trial was held remotely on December 15, 2022. Kevin McKie (McKie) appeared and testified on his own behalf. Jordan Peasley (Peasley), auditor for the Department of Revenue (the Department), appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 to 13, 15 to 17, and Defendant's Exhibits A and B were received into evidence without objection. The court requested Defendant to submit a copy of Plaintiff's original tax return after trial, which was marked as Exhibit C and received into evidence without objection.

## I. APPROACH

In a typical income tax case, the court starts its analysis with the taxpayer's return, looks at the Department's Notice of Assessment, and then considers the appeal in the context of the conflict between the two. In this case, that approach would unlikely result in an efficient analysis because neither party offered a copy of Plaintiff's original tax return during trial. Instead, Plaintiff submitted a significantly revised tax return ("revised return") which had never been accepted by Defendant and did not immediately inform the court of that fact.

In general, the Department does not accept amended returns after an audit; to do so could lead to an inefficient and potentially endless loop of back-and-forth adjustments. Likewise, the

court does not regularly use unfiled amended returns as a starting point for the analysis of a case. However, after post-trial receipt of Plaintiff's original tax return, the court views beginning its analysis with Plaintiff's revised return as an approach better suited for the resolution of this matter.

In this Decision the court will start with Plaintiff's revised tax return, assume the numbers contained therein are correct unless otherwise challenged by Defendant, and analyze and discuss only those sections that are disputed or where the court deems necessary. This approach appears to the court to be in conformity with the spirit of ORS 305.575, which provides as follows:

> "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department[.]"[1]

## II. FACTUAL OVERVIEW

This factual overview serves merely as a general introduction to the case and its subject matter. The court introduces additional and more specific facts in the Analysis section of this Decision.

During the 2018 tax year, Plaintiff was employed as a registered nurse and self-employed as a real estate investor. Plaintiff owned five residential rental properties: one in Boise, Idaho; a second in Houston, Texas; a third in Tomball, Texas; a fourth in Memphis, Tennessee; and a fifth in Conroe, Texas.

In 2013, Plaintiff purchased a 2010 Lance trailer for recreational use. He testified that in 2017, he converted the trailer to 100 percent business use. In 2018, to avoid incurring hotel

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

expenses, Plaintiff used the trailer as lodging during a three-day real estate seminar held in Eugene, and during several trips to Boise to repair his rental property.

In May 2018, Plaintiff attended a real estate investment seminar in Eugene. He claimed as deductions, mileage for travel from his home in Bend to Eugene and he used a per diem method to deduct meal expenses. On his original tax return, Plaintiff also used a per diem method to deduct lodging expenses. However, after the audit Plaintiff realized he could not use that method to deduct lodging expenses, so on his revised tax return he instead elected to add the trailer as a business asset and depreciate it using a five-year life span.

A speaker at the real estate seminar touted the favorable returns on foreign real estate investments. Plaintiff testified that he traveled to Panama and Colombia on one trip and to the Philippines on a second trip looking for real estate investing opportunities. Plaintiff kept handwritten notes for properties he viewed during his trips. He took out cash from ATMs in the Philippines because many businesses there did not accept credit cards. Plaintiff did not obtain receipts for his purchases and opined that it was "common sense" that he would incur business expenses as part of his travel. Plaintiff testified that he has never purchased or owned any foreign real property as of the trial date and was uncertain of the legal and regulatory requirements of acquiring or owning property in the countries he visited.

Plaintiff traveled to his rental property in Boise, Idaho, on several occasions in 2018 to make significant repairs prior to sale of the property. Plaintiff claimed as deductible expenses supplies purchased for use in repairing and maintaining his Boise property.

Plaintiff sold his Boise rental property on December 7, 2018. During the audit the parties agreed to adjust the figures regarding gain on sale of the property to include a recapture of previously taken depreciation. Despite that agreement, the parties had different computations on

the gain on sale based on the travel expenses claimed by Plaintiff when he repaired and prepared the property for sale.

## III.  ANALYSIS

The issues presented are: (1) the deductibility of various business expenses, including expenses for mileage, meals, travel, and repairs; and (2) Plaintiff's gain on the sale of his Boise rental property.

A.  *General Statements of Law*

Federal tax provisions apply to this state tax case because, subject to modifications not pertinent here, Oregon defines taxable income by reference to the federal tax code.  *See* ORS 316.022(6); *see also* ORS 316.048.  In cases before this court, the party seeking affirmative relief bears the burden of proof and must establish their case by a preponderance of the evidence.  ORS 305.427.  That standard is met by a showing that "the facts asserted are more probably true than false[.]"  *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958).  Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction.  *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).  Additionally, taxpayers are required to maintain records sufficient to establish the amount of their income and deductions.  IRC § 6001; Treas. Reg. § 1.6001–1(a).

B.  *Substantiation of Seminar Expenses*

Plaintiff testified that he traveled from his home in Bend to Eugene to attend an educational seminar on real estate investing occurring from May 9 to May 13, 2018.  Plaintiff claimed deductions for his trip, including the expense of the seminar, mileage, and meals.

/ / /

Plaintiff submitted an invoice for the expense of the seminar in the amount of $197. A charge in the same amount appears on Plaintiff's credit card statement. Deductions are generally allowed for ordinary and necessary business expenses. IRC § 162. Self-employed individuals may deduct education expenses to maintain or improve skills required by current employment. Treas. Reg. § 1.162-5(a). At the time of the seminar, Plaintiff was a self-employed real estate investor having owned at least one rental property since 2005. Thus, Plaintiff's educational seminar expense of $197 is deductible as an ordinary and necessary business expense under Internal Revenue Code (IRC) section 162.

Plaintiff claimed a mileage deduction for the seminar. Though ordinary and necessary business expenses are generally deductible, automobile expenses require a heightened level of substantiation. IRC §§ 162, 274(d). Plaintiff submitted a typed record including handwritten notes for the purpose of documenting mileage to attend the seminar. Though Plaintiff submitted one mileage record, two differing mileage totals are listed: one portion of the record shows a starting odometer reading of 120,337 and an ending odometer reading of 120,617, totaling 280 miles driven, whereas the other portion of the record shows 250 total miles for the same trip. Plaintiff testified that the portion of the record listing 280 total miles is correct. Given the lack of evidence explaining the additional 30 miles claimed, the court accepts the lower number of 250 miles as more plausible. The Internal Revenue Service standard mileage rate in 2018 was 54.5 cents per mile; thus, Plaintiff may deduct $136.25 as mileage expenses. Rev. Proc. 2010-51, § 4.01.

Plaintiff claimed a per diem meal allowance of $51 per day for four days of the seminar, including a travel day. "[S]elf-employed individuals may substantiate the amount of deductible meal expenses by using [a per diem] rate * * *." Rev. Proc. 2011-47 § 4.03. Because he is self-

employed, Plaintiff may use a per diem allowance for meals and incidental expenses. *Id*. Plaintiff substantiated four days of meals expenses totaling $204. However, deductions for meals cannot exceed 50 percent of the amount of the meal expense. IRC § 274(n)(1). Plaintiff's use of a $51 per diem rate is reduced by 50 percent for an allowance of $102.

Plaintiff's deductions for the costs of attending the Eugene real estate investing seminar are granted in the amounts of $197 (seminar expense), $136.25 (mileage), and $102 (meals).[2]

C.      *Depreciation of Travel Trailer*

Plaintiff testified that in 2013 he purchased a 2010 Lance trailer for personal use, which he converted to 100 percent business use in 2017. Plaintiff presented a printout from an online "NADA" guide estimating the average retail price for the trailer as of April 2017 was $12,540. Plaintiff testified that the trailer was used for business travel and accommodations for the real estate seminar and while visiting and repairing his rental property in Boise in lieu of staying in a hotel. Plaintiff did not claim depreciation for the trailer in his original tax return, but he sought the deduction in his revised return after Defendant denied his per diem lodging claim.

IRC section 167(a) generally allows for the depreciation of property used in a trade or business. However, a travel trailer is considered "listed property" under IRC section 274 and therefore, no deduction, including for depreciation, related to it is allowable unless it meets the heightened standard of substantiation imposed by IRC section 274(d). IRC § 280F(d)(4); Treas. Reg. § 1.274-5T(a). That is, taxpayers must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement the amount of the expense, the time and

/ / /

---

[2] Plaintiff used a per diem for lodging in his original return but removed the deduction in his revised return as that method is not allowable. Rev. Proc. 2011-47. Plaintiff changed his lodging expense methodology which is considered under the next section regarding depreciation for his travel trailer.

place of use of the property, and the business purpose of the property. IRC § 274(d); Treas. Reg. § 1.274-5T(a), (b)(6).

The court is not persuaded that Plaintiff's evidence is sufficient to substantiate the travel miles for the trailer based on an aggregation of several factors. Plaintiff asserts 100 percent business use beginning in 2017, but it appears he did not take the depreciation until 2018 which is not the first year it was placed into service. Second, mileage records of the trailer's use are suspect. Plaintiff's mileage log for the real estate seminar contains conflicting mileage information. Plaintiff's mileage log for the travel to Idaho purports to show odometer readings from Bend to Boise during the period August 17, 2018, to August 25, 2018. However, Plaintiff's credit card statement shows charges from Hines, Oregon on August 21, 2018. Additionally, Plaintiff's log documents travel to Boise from September 22, 2018, to October 4, 2018. However, Plaintiff's credit card statements show charges during that period from Grand Teton National Park and Jackson, Wyoming—more than 700 miles round trip from where Plaintiff's log shows he was. Based on the above, the court does not find Plaintiff's mileage logs reliable.

"[A] taxpayer is not allowed a deduction or credit on the basis of approximations or unsupported testimony." *Ghardiri-Asli v. Comm'r*, 118 TCM (CCH) 355 (2019), 2019 WL 5423725 at *11 (US Tax Ct).

> "If a taxpayer does not substantiate the travel expense as required by section 274(d), he is not entitled to a deduction for the expense no matter how plausible it may be that he paid the expense. For expenses covered by section 274, the proposition is simple--a taxpayer who cannot prove the expense loses the deduction."

*Schladweiler v. Comm'r*, 80 TCM (CCH) 681 (2000), 2000 WL 1690282 at *3 (US Tax Ct), *aff'd*, 28 F Appx 602 (8th Cir 2002). Based on a lack of substantiation, Plaintiff's claim to depreciate the 2010 Lance trailer as a business asset in 2018 is denied.

D. *Substantiation of International Business Travel Expenses*

1. *Travel to Panama and Colombia*

Plaintiff testified that he traveled to Panama and Colombia seeking investment property opportunities. His handwritten itinerary shows that he missed his flight on December 1, 2018, and arrived in Panama the next day. Over the next four-day period, Plaintiff went on several tourism excursions and viewed two listed properties. On December 6, 2018, he flew to Cartagena, Colombia. In the following six-day period, he went on several tourism excursions and viewed one listed property. On December 11, 2018, Plaintiff flew to Bogota, Colombia and over the next six days viewed one listed property. Plaintiff seeks deductions consisting of meals, incidentals, and lodging in the amount of $2,248.71; air travel in the amount of $1,139.47; and cash withdrawals plus ATM fees totaling $815.83.

Plaintiff testified that 100 percent of his trip to Panama and Colombia was for business purposes. During trial, Peasley questioned Plaintiff as to how that could be true when Plaintiff recorded seeing only one property in Colombia over a course of days. Plaintiff responded that he was always looking at, and for, properties in unrecorded ways, such as by informal appointment or looking for "for sale" signs.

Under IRC section 162(a), a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" However, IRC section 274(d) provides that no deduction is allowable under IRC section 162 for any traveling expense, including meals and lodging, unless the taxpayer substantiates the expense "by adequate records or by sufficient evidence corroborating the taxpayer's own statement[.]"

> "[I]n addition to satisfying the substantiation requirements in IRC section 274(d), a taxpayer who travels outside the United States must comply with IRC section

274(c), which requires a taxpayer to track much more precisely—and to document—the time the taxpayer spends on business vs. nonbusiness activity and allows deductions only to the extent the expenses are specifically allocable to business activity."

*Khalaf v. Dept. of Rev.*, 24 OTR 1, 13 (2020). "The more rigorous tracking and expense allocation rules under IRC section 274(c) apply when the trip exceeds one week and the amount of time attributed to nonbusiness activities is more than 25 percent of the total time of the trip." *Id.* at 21 n 11 (2020); *see also* Treas. Reg. § 1.274-4(d)(1).

Plaintiff's travel was longer than one week and based on Plaintiff's own testimony and records, the court finds the evidence insufficient to establish that the time attributed to nonbusiness activity did not amount to more than 25 percent of the trip. Treas. Reg. § 1.274-4(b)-(d). Thus, Plaintiff is subject to the heightened requirements of IRC section 274(c). *Id.*

Plaintiff's testimony, itinerary and supporting credit card statements are wholly inadequate to support his claims for foreign travel expenses. Firstly, Plaintiff's itinerary is rather sparse on details. Information about properties visited, names, addresses and phone number of persons he met with are incomplete or missing. The numbers of properties viewed is minimal in relation to the length of the trip. He did not present testimony or other evidence that as a foreigner, he could even have legally purchased property in those countries. Even if the purpose of the trip was mainly business, the testimony and records are insufficient for the court to determine a percentage of business versus personal time. Plaintiff's testimony regarding taking "tours" and strolling through the streets and looking for "for sale" signs does not persuasively show a primary business purpose. Plaintiff's deduction of cash advances without receipts or any other account of what items he purchased is insufficient substantiation to show a business purpose. Plaintiff has failed to substantiate the business percentage on his trips to Panama and Colombia. Therefore, Plaintiff's deduction for costs related to the trips is denied.

2.    *Travel to the Philippines*

Plaintiff's testimony and exhibits regarding the trip to the Philippines are substantially similar to those concerning the trip to Panama and Colombia and fail for the same reasons. Plaintiff's travel records and cash advances are insufficient to substantiate the percentage of business activity. His testimony that he was always looking for business, even while scuba diving, was not persuasive. Further, Plaintiff admitted at trial he was aware that he could not purchase any property in the Philippines due to a local law requiring citizenship. Plaintiff claimed that his girlfriend could purchase property but admitted that he traveled alone on the trip, making Plaintiff's claimed workaround improbable. Thus, Plaintiff's deduction for travel expenses to the Philippines must be denied.

E.    *Substantiation of Repair and Improvement Expenses to Rental Property*

Plaintiff testified that several expenses related to the repair and improvement of his rental property in Boise were improperly disallowed by Defendant. Defendant's Conference Decision Letter allowed expenses for the repair of the Boise property in the amount of $7,938.

Ordinary and necessary business expenses are deductible under IRC section 162, though they must be substantiated. Plaintiff submitted evidence in the form of testimony, credit card statements, and written reports documenting trips to Boise. The credit card receipts do not detail what items were purchased and the court cannot ascertain whether they were personal or business items. Plaintiff testified that he could provide receipts and invoices, possibly more or different ones than were provided to Defendant at conference. However, Plaintiff failed to do so. Without proof substantiating the business expenses, the court must find that they are not deductible.

/ / /

F.    *Cost Basis for Boise Rental*

After the audit, the parties' disagreement regarding the Boise rental property was limited to whether costs of repairs could be included as costs of sale when calculating the net gain on sale of the property.  Plaintiff did not present evidence substantiating the costs of repairs apart from those already allowed during the audit.  Therefore, the court sustains Defendant's calculation of the net gain of the property as $108,812.

## IV.  CONCLUSION

After careful consideration, the court finds that for the 2018 tax year, the parties are deemed to have agreed to depreciation recapture in the amount of $80,241 and the exclusion from gross income of $23,892 as transfers between Plaintiff's accounts.  Plaintiff is entitled to deductions in the amounts of (1) $197 for the expense of a real estate seminar in Eugene, (2) $136.25 for miles driven to and from the seminar, and (3) $102 for meal expenses while attending the same seminar.

Plaintiff did not substantiate his claims regarding (1) expenses relating to international travel to Panama and Colombia or separately, (2) to the Philippines, (3) depreciation of a 2010 Lance trailer, and (4) repair and improvement expenses for Plaintiff's Boise property denied by Defendant in the Conference Decision Letter.  Now, therefore,

///

///

///

///

///

///

///

///

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted in part and denied in part. His income and deductions are to be adjusted in accordance with this Decision.

Dated this ___ day of March, 2024.

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on March 22, 2024.*